10-1336-cv
*Montanez v. Sharoh*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of November, two thousand eleven.

PRESENT: JOHN M. WALKER, JR.,
ROBERT A. KATZMANN,
RICHARD C. WESLEY,
*Circuit Judges.*

---

JOSEPH M. MONTANEZ,

*Plaintiff-Appellee,*

-v.- 10-1336-cv

DANIEL SHAROH, Police Officer,
MICHAEL MCCORMACK, Police Officer,

*Defendants-Appellants,*

CITY OF MILFORD, KEITH L. MELLO,
Police Chief, MACHARELLI, Police Officer,
KIELY, Police Officer,

*Defendants.*

---

FOR DEFENDANTS-APPELLANTS: JAMES N. TALLBERG (Kerry L. Keeney Curtin, *on the brief*), Karsten, Dorman & Tallberg, LLC, Hartford, CT.

FOR PLAINTIFF-APPELLEE:       DAVID F. ABERNETHY, Drinker
                              Biddle & Reath LLP,
                              Philadelphia, PA.

FOR AMICUS CURIAE AMERICAN
CIVIL LIBERTIES UNION OF
CONNECTICUT:                  SANDRA J. STAUB (David J.
                              McGuire, *on the brief*), American
                              Civil Liberties Union of
                              Connecticut, Hartford, CT.

Appeal from the United States District Court for the District of Connecticut (Arterton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Memorandum and Order of the district court be **REVERSED** and **REMANDED** to the district court to enter judgment to the Appellants dismissing the complaint.

Defendants-Appellants, Officer Daniel Sharoh and Officer Michael McCormack of the Milford, Connecticut Police Department, appeal from an Order of the United States District Court for the District of Connecticut (Arterton, *J.*). The district court, *inter alia*, denied Appellants' motion for summary judgment asserting a qualified immunity defense and granted summary judgment *sua sponte* in favor of Plaintiff-Appellee Joseph Montanez on the issue of liability.

Montanez brings this lawsuit pursuant to 42 U.S.C. § 1983 arising from Appellants' warrantless entry and search of his home during an attempted "child welfare check" by the

Connecticut Department of Children and Families ("DCF").  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We have jurisdiction to review the district court's denial of qualified immunity to the extent that the appeal "is based on either the undisputed facts or the version of the facts presented by [Montanez]."  *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003).  We review *de novo* a district court's decision to deny summary judgment on the basis of qualified immunity.  *Faghri v. Univ. of Conn.*, 621 F.3d 92, 96 (2d Cir. 2010).  "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

A qualified immunity determination involves a two-part inquiry. *See Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010).  First, we ask whether "the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007).  Second, we must

3

decide "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the officer to believe that his conduct did not violate such a right, then the officer is protected by qualified immunity." *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007). We may exercise our discretion in deciding which inquiry should be addressed first. *Pearson*, 555 U.S. at 236.

Appellants' warrantless entry did not violate Montanez's Fourth Amendment rights. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (internal quotation marks omitted). Thus, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586.

"Nevertheless, because the ultimate touchstone of the

4

Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).  One such exception is that "[p]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (internal quotation marks and alteration omitted).  "Courts must apply an objective standard to determine the reasonableness of the officer's belief," *id.*, taking into account "the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences," *id.* at 197 (quoting 3 Wayne LaFave, *Search and Seizure* § 6.6(a), at 391 (3d ed. 1996)).  Moreover, this Court uses six guides to aid in determining whether exigent circumstances exist to justify a warrantless entry:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*United States v. Fields*, 113 F.3d 313, 323 (2d Cir. 1997) (quoting *United States v. MacDonald*, 916 F.2d 766, 769-70 (2d Cir. 1990) (en banc)).

The objective circumstances at the time of Appellants' entry could cause a reasonable officer to believe that there were exigent circumstances requiring prompt entry. Although the factors above do not squarely apply to the case at hand, they are "intended not as an exhaustive canon, but as an illustrative sampling of the kinds of facts to be taken into account." *MacDonald*, 916 F.2d at 770.

Prior to entering the house, Appellants were informed that Montanez was armed and dangerous and a convicted felon wanted for weapons and narcotics violations. They were also warned to use "extreme caution" if they located Montanez.

The district court dismissed the possibility that guns or drugs remained a risk to Montanez's children because the police had already seized an Uzi firearm and drugs from the home less than 24 hours earlier. This was error. In addition to the Uzi 9mm firearm, the police had seized an empty holster and boxes of .22 and .38 caliber ammunition, but the police did not find a weapon that could fit the holster or that could fire the ammunition. Indeed, the officers were explicitly warned by an All-Points Bulletin

6

that Montanez was believed to be armed and dangerous.

Moreover, Officer Sharoh knew there was a documented history of DCF involvement with Montanez's seven-year-old step-daughter, which included substantiated complaints.[1] Officer Sharoh also knew that based on the earlier search, which resulted in the seizure of guns and drugs that were easily accessible to children, DCF wanted to remove the child due to concerns about her health, welfare, and safety.

Montanez argues that the record shows that Appellants had no reason to believe that there was any person inside the home.  We disagree.  At the time of entry, Montanez remained a fugitive despite his promise to the police that he would return to his home.  Moreover, the fact that the lights were on at 1:00 a.m., that a side door was unlocked, and that no one responded to knocks at the door or a phone call does not rule out the reasonable possibility that someone was inside the home.  Although the seven-year-old

---

[1] Montanez argues that the substantiated complaints were not connected to either Montanez or the girl's mother, but rather other relatives who did not reside in the house. That is irrelevant because we look to the circumstances confronting the officers at the time they entered the home in determining whether their entry was justified by exigent circumstances.  At the time of entry, Officer Sharoh knew "that there had been a history of DCF involvement with the occupants of that residence, including Mr. Montanez."  App. at 163.

was reported to be at her grandmother's house when the police executed the search warrant, there is no evidence that Appellants had any reason to believe that the girl would still be at her grandmother's house when they entered the home approximately eight hours later. It was objectively reasonable for Appellants to believe that Montanez may have been at the residence and that he posed a threat to not only the child, but also to the DCF worker attempting to conduct a welfare check.

Finally, the officers entered through an unlocked door, did not cause any property damage or seize anything, and left after five to seven minutes once they confirmed that no one was present. The undisputed facts here clearly indicate that Appellants' entry was justified by exigent circumstances. Because Appellants did not violate Montanez's Fourth Amendment rights, the second part of the qualified immunity inquiry is unnecessary. Appellants are entitled to qualified immunity.

Because we have concluded that exigent circumstances justified Appellants' entry, it follows that the district court erred in granting summary judgment *sua sponte* in favor of Montanez on the issue of liability for his warrantless entry claim. For the foregoing reasons, we **REVERSE** the

8

Memorandum and Order of the district court to the extent that it denied Appellants' motion for summary judgment and granted summary judgment in favor of Montanez on the issue of liability and **REMAND** to the district court to enter judgment in favor of Appellants dismissing Montanez's complaint.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk